UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT E. BROUGHMAN,

      Plaintiff                          Civil Action No.  18-13318

v.                                   HON.  Judith E. Levy
                                       U.S. District Judge
                                     HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

      Defendant.

_____/

## AMENDED REPORT AND RECOMMENDATION

Plaintiff Scott E. Broughman ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below,  I recommend that Defendant's Motion for Summary Judgment [Docket #13] be GRANTED and that Plaintiff's  Motion for Summary Judgment [Docket #12] be DENIED.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on August 28 and September 25, 2015  respectively, alleging disability as of January 1, 2002 (Tr. 22, 162, 164).  Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on June 28, 2017 in Lansing, MI (Tr. 34). Administrative Law Judge ("ALJ") Paul W. Jones presided.  Plaintiff, represented by Charles Robinson, testified (Tr. 28-51, 53-62), as did Vocational Expert ("VE") David Huntington (Tr. 51-53, 63).  On October 4, 2017, ALJ Jones found that Plaintiff was not disabled (Tr. 23-30).  On September 10, 2018, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for judicial  of Defendant's determination on October 24, 2018.

## II.   BACKGROUND FACTS

Plaintiff, born September 17, 1966 was 51 at the time of the administrative decision (Tr.  30, 162).    He obtained a GED and worked previously as a tool room machinist (Tr. 193).  He alleges disability due to levoscoliosis and multilevel degenerative disc disease (Tr. 192).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

He stood 5' 7" and weighed 157 pounds (Tr. 39).  He had been married for the past 16 years (Tr. 39).  He and his wife lived in a rented house with their two minor daughters and his 21-year-old son (Tr. 40-41).  His son helped him with household and personal projects (Tr. 42).

*Plaintiff's counsel interjected that his client's work activity after the alleged onset date of January 1, 2002 was "accommodated" work rather than Substantial Gainful Activity ("SGA") (Tr. 42).*

Plaintiff was able to read, write, and perform simple math (Tr. 43). He had health insurance through his wife's work (Tr. 44). He experienced back problems since sustaining an "ununited break of the back" in a 1985 car accident (Tr. 46, 61-62). He had a sporadic work history due to intermittent back problems (Tr. 46). The accommodated work involved lifting up to 90 pounds, making fixtures, and making parts from blueprints (Tr. 48). The work came to an end when his father fired him (Tr. 47). He had been unable to work since then because his father gave him "bad references" (Tr. 49). He would be unable to work as a greeter or cashier because he was "an attitudey person that belongs in the tool room by himself," and because of neck, back and hip pain and foot numbness (Tr. 49).

In response to questioning by his attorney, Plaintiff reiterated that back problems prevented him from steady work (Tr. 53). He also experienced right-sided Carpal Tunnel Syndrome ("CTS") and wore a wrist brace at night (Tr. 54). He required the use of back braces on a "bad" day, adding that he experienced bad days around half of the time (Tr. 54). At such times, he required the help of his family (Tr. 55). He slept poorly due to prostate problems and back pain (Tr. 55). He took Norco and ibuprofen for pain, adding that ibuprofen made him tired (Tr. 56). He experienced back pain while sitting (Tr. 56). He was unable to carry any weight (Tr. 57). Although he had health insurance, he seldom sought treatment for his back (Tr. 59). He was unable to walk more than one block without back discomfort (Tr. 60). Plaintiff was jailed for six months following the 1985 car accident (Tr. 61-62).

### B. Medical Records

Plaintiff concedes that there is "too little" evidence supporting disability prior to the expiration of his entitlement to DIB of June 30, 2010, but contends that he is entitled to SSI

for the subsequent period.[1]  ECF No. 12, PageID.553.  Accordingly, the sparse records predating June 30, 2010 are not included with the present discussion.

### 1.  Treating Records

In September, 2011, Plaintiff reported moderate back pain radiating into his left leg (Tr. 294-295).  He exhibited a normal gait and balance (Tr. 297).  In December, 2012, Plaintiff reported severe back pain (Tr. 288).  A sensory examination was unremarkable (Tr. 290).  He was instructed to limit lifting to 10 pounds and start back exercises after a reduction in pain (Tr. 290).  In August, 2014, Plaintiff reported moderate back pain, noting that he could usually control pain with ibuprofen until becoming "more active" in the past month (Tr. 280).  He reported pain after jumping off a deck (Tr. 280, 392).  In December, 2014, Plaintiff reported right hand numbness and elbow pain (Tr. 271).  An examination of the right hand and elbow was negative for swelling but showed a positive Tinel's sign (Tr. 274).  He was diagnosed with right CTS and prescribed a wrist brace for nighttime use (Tr. 275).

---

[1]

Entitlement to DIB under Title II of the Social Security Act is based on a finding of medical disability and a claimant's earning record. "An applicant's 'insured status' is generally dependent upon a ratio of accumulated 'quarters of coverage' to total quarters." *Arnone v. Bowen*, 882 F.2d 34, 37 (2nd Cir. 1989) (citing 42 U.S.C. § 423(c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.130–404.133 (1988)). " 'Quarters of coverage' " "include quarters in which the applicant earned certain amounts of wages or self-employment income." *Id.* (*citing* 20 C.F.R. §§ 404.101(b), 404.140–404.146 (1988)). To be entitled to DIB, a claimant must show that he was disabled prior to his date last insured ("DLI"). 20 C.F.R. §§ 404.315(a)(1), 404.320(b)(2). In contrast, for an award of SSI benefits under Title XVI, a claimant must establish disability and financial need. *Willis v. Sullivan*, 931 F.2d 390, 392, fn. 1 (6th Cir. 1991); 42 U.S.C. § 1382. Regardless of the alleged date of disability onset, SSI applicants are not entitled to benefits until "the month following the month" that the application was filed. 20 C.F.R. § 416.335.

In January, 2015, Plaintiff reported moderate to severe back pain (Tr. 266). Treating records note a prescription for a right wrist brace and "failed" physical therapy (Tr. 268, 270). Imaging studies showed degenerative disc disease at L5-S1 due to the 1985 car accident (Tr. 337). A January, 2015 MRI of the lumbar spine showed mild effacement of the thecal sac due to levoscoliosis at L1-L2, and L2-L3 without nerve root impingement and a disc bulge with moderate foraminal encroachment at L5-S1 (Tr. 247, 334). In March, 2015, Plaintiff reported lower back pain without radiation which was relieved by heat, medication, and rest (Tr. 255). He described the pain as "moderate" (Tr. 261). He denied performing stretching or core-strengthening exercises, but reported that he worked on cars and shoveled snow (Tr. 261). He noted that he had been called "lazy" by physical therapists (Tr. 261). Plaintiff was informed that he would no longer be prescribed Norco if he continued to be non-compliant with recommended treatment (Tr. 261).

The same month, osteopathic manipulation was administered for tenderness, asymmetry, and a reduced range of motion (Tr. 258). Plaintiff was advised to drink more water and engage in home exercises (Tr. 259). In June, 2015, Plaintiff reported severe lumbar radiculopathy that began three months earlier (Tr. 250). He reported that he was "starting to be limited in what he [could] do" adding that he felt like his leg was going to "give out" (Tr. 250). He reported using some of the prescribed Norco (Tr. 250). Plaintiff admitted to "heavy" tobacco use (Tr. 252). Treating records also note a prescription for Flexeril and extremity weakness with an antalgic gait but "full weight bearing" without the need for an assistive device (Tr. 253, 264).

Neurosurgical records by Harish Rawal, M.D. from the same month note "no true neurogenic claudication" (Tr. 341). Plaintiff was advised that his treatment should begin with physical therapy and epidural steroid injections and to stop tobacco use due to the effect

on "spinal health" (Tr. 341).  He demonstrated a normal gait with normal muscle tone (Tr. 347).  Therapy notes state that Plaintiff experienced back pain after jumping off a deck (Tr. 392).  July, 2015 physical therapy discharge records note Plaintiff's admission that he had not kept up with home exercises (Tr. 383).  In September, 2015, Plaintiff reported "mild" relief with physical therapy (Tr. 354).  Plaintiff demonstrated a normal gait and muscle tone (Tr. 357).  In December, 2015, Plaintiff reported that the back pain was worsening and that he could do "fewer and fewer things at home" (Tr. 441).  Treating notes state that Plaintiff appeared uncomfortable; alternated between sitting and standing positions several times; and was wearing a back girdle (Tr. 447).

January, 2016 records note reports of "moderate" neuropathy with pain from the heel up the leg (Tr. 432).  Plaintiff declined a recommendation to take Neurontin or Lyrica (Tr. 432).  He reported that he was "less active with things that he [knew] would aggravate his pain" but was able to use a stair-stepping exercise machine (Tr. 432).  In May, 2016, Plaintiff demonstrated full muscle strength in the lower extremities and a normal gait (Tr. 359).  April, 2017 records note an antalgic gait but the ability for "full weight bearing" without an assistive device (Tr. 411).

## 2.  Consultative and Non-Examining Sources

In November, 2010, Reuben Henderson, D.O. performed a non-examining review of the medical records on behalf of the SSA, finding that prior to September 11, 2011 (including the period after the June 30, 2010 expiration of eligibility for DIB) Plaintiff did not experience any significant degree of work-related limitation (Tr. 76, 83).

Dr. Henderson found that from September 12, 2011 forward, while Plaintiff experienced a significant degree of work-related limitation, he could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for around six hours in an eight-hour

workday; and push/pull frequently (as opposed to *constantly*) in right upper extremity (Tr. 85). He found that Plaintiff could engage in occasional postural activity except for a preclusion on all climbing of ropes, ladders, and scaffolds (Tr. 85). He limited right-sided handling and overhead reaching to a frequent basis (Tr. 86). He found that Plaintiff should avoid all exposure to vibration and hazards such as machinery and heights (Tr. 86-87).

### C. VE Testimony

VE Huntington indicated his testimony would be consistent with the information found in the *Dictionary of Occupational Titles,* (*"DOT"*) (Tr. 51). He classified Plaintiff's past relevant work as a machine tool operator as skilled and exertionally medium (heavy as performed)[2] (Tr. 52). The ALJ then posed the following question, describing a hypothetical individual of Plaintiff's age, education, and work experience:

> He would do light work as defined by the regulations, who can only frequently push or pull with the right arm; can never climb ladders, ropes, or scaffolds; can occasionally do the other posturals, including climbing ramps or stairs, balance, stoop, kneel, crouch, crawl; who can only frequently overhead reach with the right arm; only frequently handle with the right hand; can never be exposed to vibrations or hazards in the workplace. Could such a person perform past work? (Tr. 52).

Based on the hypothetical limitations, the VE found that the individual would be unable to perform Plaintiff's past relevant work, but could perform the light, unskilled work of a survey worker (telephone) (64,000 jobs in the national economy); information clerk (57,000); and marker (162,000) (Tr. 52-53). The VE stated that if the hypothetical individual were

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

unable to perform any lifting, he would be precluded from all of the above-stated positions (Tr. 63).

### D.  The ALJ's Decision

Citing the medical records, ALJ Jones found that prior to the June 30, 2010 expiration of eligibility for DIB, Plaintiff experienced the medically determinable impairment of "otalgia " but that the condition did not create significant work-related impairment (Tr. 24-25).   The ALJ noted that Plaintiff's left ear ache did not last for more than one week (Tr. 25).  He cited Dr. Henderson's non-examining finding that the condition did not create significant work-related limitation (Tr. 25).

As to Plaintiff's condition after the expiration of DIB, the ALJ found that the condition of lumbar degenerative disc disease was a severe impairment (creating some degree of work-related limitation) but did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 26-27).  The ALJ found that the condition of CTS was non-severe (Tr. 26).

For the period after the expiration of DIB entitlement, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional limitations:

> [F]requently push/pull with right arm; never climb ladders, crawl; frequently reach overhead with the right arm; frequently handle with the right hand; with no exposure to vibration or hazards in the workplace (Tr. 27).

Citing the VE's testimony, the ALJ found that although Plaintiff was unable to perform his past relevant work, he could perform the light, unskilled work of a survey worker (telephone), information clerk, and marker (Tr. 29, 52-53).

-8-

The ALJ discounted the allegations of disabling limitation, noting that as of September, 2015, Plaintiff reported only occasional back pain of mild to moderate severity (Tr. 28). The ALJ noted that Plaintiff exhibited "normal sensation, strength, reflexes and gait" on "multiple occasions" (Tr. 28). He found that Plaintiff's "lack of medical attention" and "very poor work history . . . . greatly diminishe[d] his credibility" (Tr. 28).

## III.   STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted). The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 1152; 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec*., 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v.*

*Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Commissioner of Social Sec.*, 203 F.3d 388, 391–92 (6th Cir. 1999).

# V. ANALYSIS

## A. Listing 1.04

Plaintiff disputes the ALJ's Step Three finding that his back condition did not meet or medically equal the "A" or "'C' criteria" of Listing 1.04 (Disorders of the spine).  ECF No. 12, PageID.540; 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04.

 "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Reynolds v. Commissioner of Social Sec.*, 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011).  At Step Three of the administrative sequence, "[a] Claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled [ ] and entitled to benefits."  The claimant must satisfy all of listing's criteria for a finding that s/he meets a listed impairment. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Houston v. Colvin*, 2017 WL 82976, at *2 (E.D. Mich. January 10, 2017)(Drain, J.)(same). The claimant bears the burden of establishing that s/he meets or medically equals a listed impairment. *Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987).

 For a disability finding under Listing 1.04, the claimant must make a threshold showing of a spinal disorder involving "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture[ ], resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" as well as the "A," "B," or "C," criteria.  20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04.  To meet the "'A' criteria," a claimant must show:

Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Alternatively, under the "'C' criteria," the claimant must show the threshold requirements of the Listing plus

Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

While Plaintiff has met the threshold requirement of degenerative disc disease, substantial evidence supports the Step Three determination that he did not meet or medically equal either the "A" or "C' criteria" for Listing 1.04.  First and most obviously, the ALJ's Step Three determination is supported by Dr. Henderson's November, 2015 non-examining finding that Plaintiff did not meet or medically equal Listing 1.04 (Tr. 84).  Notwithstanding the deference accorded to the opinion of a treating source for the period under consideration in this case, "'opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources.'" *Brooks v. Commissioner of Social Sec.*, 531 Fed.Appx. 636, 642 (August 6, 2013).  Dr. Henderson's findings have particular significance given that none of the treating sources opined that Plaintiff's condition met or medically equaled Listing 1.04.

Further, the record shows that Plaintiff cannot meet all of the requirements for disability under either the "A" or "'C' criteria" of Listing 1.04.  *See Houston v. Colvin*, 2017 WL 82976, at *2 (E.D. Mich. January 10, 2017)(Drain, J.)(failure to present evidence of even one of the elements of Listing 1.04A forecloses a finding of disability at Step Three). Plaintiff cites the treating source observations and imaging studies of multilevel degenerative

changes (247, 337, 341). However, he fails to meet "'A' criteria" given the lack of any evidence of nerve root compression and numerous treating records showing normal motor functioning and normal muscle strength. Likewise, Plaintiff cannot meet the "'C' criteria," which requires the "inability to ambulate effectively." Under Listing 1.00B2b(1) "ineffective ambulation" is generally defined as follows:

> [E]xtreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

None of the records shows that Plaintiff required a one-handed assistive device, much less a walker requiring the use of both hands. Listing 1.00B2b(2) notes that "ineffective ambulation" may also include "the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail."

Again, substantial evidence supports the conclusion that Plaintiff did not experience ineffective ambulation. While Plaintiff testified that he was unable to walk more than a city block without discomfort, the treating records do not support his professed limitations. September, 2011 records show a normal gait and balance (Tr. 297). In August, 2014, Plaintiff reported that up until that month, he was capable of controlling his pain with ibuprofen at times he was "more active" (Tr. 280). In March, 2015, he reported non-radiating lower back pain (Tr. 255, 261). Plaintiff's denial of radiating pain, along with the sparse treating records, undercuts his allegations of ongoing lower extremity limitations. While Plaintiff reported lower extremity weakness and an antalgic gait in June, 2015, he was

found to be capable of "full weight bearing" (Tr. 253, 264).   Dr. Rawal's records from the same month note a normal gait and muscle tone (Tr. 347).   In January, 2016, Plaintiff declined to consider the use of neurologic agents despite his allegations of leg pain (Tr. 432). He reported that he was able to use a "stair-stepping" exercise machine without aggravating the back condition (Tr. 432). May, 2016 records note full muscle strength and a normal gait (Tr. 359).   While Plaintiff demonstrated an antalgic gait in April, 2017, he was again found to be capable of "full weight bearing" without an assistive device (Tr. 411).

As such, the determination that Plaintiff did not meet any of criteria for disability under Listing 1.04 should remain undisturbed.

### B.  The Hypothetical Question/RFC

Plaintiff argues that the hypothetical question posed to the VE at the hearing and by extension, the identical RFC for exertionally light work, does not reflect his full degree of physical limitation.   ECF No. 12, PageID.544.   He contends that the evidence actually requires a finding that he was limited to sedentary work, which would direct a finding of disability as of his 50th birthday under the Medical-Vocational Grids ("Grids".)[3]   ECF No.12, PageID.546; 20 C.F.R. part 404, subpart P, App. 2, Rule 201.14.

Plaintiff is correct that a hypothetical question forming the basis of the RFC found in the administrative opinion constitutes substantial evidence only if it accurately reflects the claimant's physical and mental impairments. *Ealy v. Commissioner of Social Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). While the Sixth Circuit has rejected the proposition that all of the

---

[3]

Plaintiff turned 50 on September 17, 2016 (Tr. 162).  Under the "Grids," an individual between the ages of 50 and 55 is categorized as an individual "closely approaching advanced age." A finding that he was unable to perform any of his past relevant work and was limited to unskilled, sedentary work would direct a finding of disability. 20 C.F.R. part 404, subpart P, App. 2, Rule 201.14.

claimant's maladies must be listed verbatim, "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] physical and mental impairments." *Webb v. Commissioner of Social Sec.*, 368 F.3d 629, 632 (6th Cir. 2004). It is well settled that vocational testimony given in response to a question that does not include all of a claimant's relevant limitations does not constitute substantial evidence. *Varley v. Commissioner of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). However, the ALJ is not required to incorporate unsubstantiated claims in hypothetical question to VE or by extension, the ultimate RFC. *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir. 1994).

The ALJ's choice of hypothetical limitations is drawn directly from Dr. Henderson's November, 2015 non-examining findings that Plaintiff could perform light work with limitations in the right upper extremity; occasional postural activity (except for a preclusion on ropes, ladders, and scaffolds); frequent handling and overhead reaching on the right; and avoidance of vibration and hazards (Tr. 86-87). As such, substantial evidence supports the ALJ's Step Five finding that Plaintiff was capable of a significant range of exertionally light work (Tr. 25, 29, 52).

Plaintiff contends that the December, 2012 restriction to lifting 10 pounds, made by a treating source, ought to have been adopted rather than the non-examining finding that he could lift up to 20 pounds occasionally. ECF No. 12, PageID.544; (Tr. 290). However, this argument fails for multiple reasons. First, none of the subsequent records suggests that the restrictions were more than temporary. For example, July, 2013 treatment records for a condition unrelated to the disability claim by the same physician do not contain lifting restrictions or even make reference to the back condition (Tr. 287). Plaintiff cannot show that he was limited to 10 pounds lifting for 12 months or longer as required for a finding of

disability under Rule 201.14. *See* fn 3 (*above*); 42 U.S.C. §423(d)(1)(A). His claim that he was limited to lifting 10 pounds is further undermined by his admission that as of March, 2015, he was able to "work on cars" and shovel snow - both of which activities generally require lifting of well more than 10 pounds (Tr. 261). As such, the ALJ did not err by posing a hypothetical limitation for light work (lifting of up to 20 pounds occasionally) rather than sedentary work (10-pound limitation).

Plaintiff also contends that the ALJ did not take into account the non-severe impairment of CTS in crafting the RFC. ECF No. 12, PageID.545. To the contrary, the ALJ's discussion and conclusions regarding the condition of CTS are well supported and explained (Tr. 26-27). The ALJ acknowledged that right-sided CTS was diagnosed in December, 2014 (Tr. 26). He found that the condition was a medically determinable impairment but found that the condition was non-severe, citing Plaintiff's ability to prepare "three course meals," perform laundry chores, drive, and shop (Tr. 27). Nonetheless, the RFC reflects Plaintiff's allegations of CTS by including restrictions in handling and overhead reaching with the right upper extremity (Tr. 27). As discussed above, the RFC is based on Dr. Henderson's November, 2015 assessment which includes acknowledgment of the condition of CTS (Tr. 82). Because the RFC is drawn directly from Dr. Henderson's findings, Plaintiff's claim that the condition of CTS was not factored into the later steps of the administrative analysis is without merit.

Because the ALJ's determination that Plaintiff was capable of a significant range of unskilled light work is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

-16-

## VI.   CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Docket #13] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #12] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: November 5, 2019

-17-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on November 5, 2019, electronically and/or by U.S. mail.

<u>s/Carolyn M. Ciesla</u>
Case Manager to the
Honorable R. Steven Whalen

-18-